UNITED STATES DISTRICT COURT
DISTRICT MASSACHUSETTS

Civil No.: 1:05-11411-RWZ

```
_____
                                  )
BARBARA A. JONES,                 )
ROBERT M. JONES,                  )
MOLLY JONES, ppa, and             )
STEVEN JONES, ppa,                )
                                  )
          Plaintiffs,             )
                                  )
vs.                               )
                                  )
ASHISKUMAR S. PATEL,              )
NITESHKUMAR K. PATEL,             )
RAMANBAJTI K. PATEL,              )
NEHA CORP.,                       )
    d/b/a Quick Stop,             )
SHANKAR CORPORATION,              )
    d/b/a Dime Redemption Center, )
DASHRATHBHAI P. PATEL, and        )
AJAY VARIETY CORP.                )
    d/b/a Highland Variety        )
                                  )
          Defendants.             )
_____)
```

## PLAINTIFFS' OPPOSITION AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS', RAMANBJATI K. PATEL, NEHA CORP. d/b/a Quick Stop, SHANKAR CORP. d/b/a Dime Redemption Center, AND HIGHLAND CONVENIENCE, MOTION TO DISMISS

_____

**NOW** come the plaintiffs, in the above-entitled matter, and hereby Notice their

Opposition to the Motion of the Defendants, Ramanbjati K. Patel, NEHA Corp. d/b/a

Quick Stop, Shankar Corp. d/b/a Dime Redemption Center, and Highland Convenience,

filed November 8, 2005.

In support hereof, the plaintiffs note that the defendants allege two (2) reasons for

the dismissal of the plaintiffs' Complaint pursuant to Fed.R.Civ.P. Rule 12(b)(6) --

**Barbara A. Jones, et al v. Ashishkumar S. Patel, et al**        **USDC Mass Civil #1:05-11411-RWZ**
Plaintiffs' Opposition And Memorandum Of Law In Opposition
To The Defendants', Ramanbjati K. Patel, NEHA Corp. d/b/a Quick Stop,
Shankar Corp. d/b/a Dime Redemption Center, and
Highland Convenience, Motion To Dismiss                                         Page  2


1) Failure To State A Claim Under Which Relief Can Be Granted, and 2) Prior Pending

State Action.  Each alleged reason will be addressed separately.

<u>Failure To State A Claim Under Which Relief Can Be Granted</u>

It is clear that Massachusetts, a Notice pleading state, clearly holds that a motion

to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief should not be

granted unless it appears to a certainty that the plaintiff is entitled to no relief under any

state of the facts which could be proven in support of his claim. 2A Moore, Federal

Practice 2245; *McCone v. New England Tel. & Tel., 393 Mass. 231, 232, 471 N.E.2d 47*

*(1984).*  In passing upon such a motion, all facts well pleaded are deemed to be admitted.

*Curran v. Boston Police Patrolmen's Association,* Inc., *4 Mass.App.Ct. 40, 41, 340*

*N.E.2d 522 (1976).*  The burden of a party whose pleading is assailed under such a

motion is minimal. *Gennari v. Revere, 23 Mass.App.Ct. 979, 503 N.E.2d 1331 (1987).*

All inferences are to be taken in favor of the plaintiff. *Sheffield Progressive, Inc. v.*

*Kingston Tool Co., Inc., 10 Mass.App.Ct. 47, 48, 405 N.E.2d 985 (1980).*

In this instance, the plaintiffs' allegations that Ashiskumar Patel was "in the

course of his employment and/or on the business of" the defendants in the instant Motion

To Dismiss at the time of the accident, are sufficient factual allegations to entitle the

plaintiffs to the relief sought in the Complaint, especially since such allegations of fact

must be taken as admitted for the purposes of this Motion.

Barbara A. Jones, et al v. Ashishkumar S. Patel, et al    USDC Mass Civil #1:05-11411-RWZ
Plaintiffs' Opposition And Memorandum Of Law In Opposition
To The Defendants', Ramanbjati K. Patel, NEHA Corp. d/b/a Quick Stop,
Shankar Corp. d/b/a Dime Redemption Center, and
Highland Convenience, Motion To Dismiss                                    Page 3

Just as a plaintiff need only allege "negligence" without detailing all the facts that support such "negligence" to survive a Rule 12(b)(6) motion, a plaintiff need only allege "course of employment with and/or being on the business of another" to survive a Rule 12(b)(6) motion, without any further details of the "employment or other business relationship". Such further details are the purpose of discovery, but if the Court feels that more facts need to be alleged, the plaintiffs request leave of Court for additional time to provide such further allegations.

It is also significant to note that Ramanbjati K. Patel's deposition occurred less than a week before the case was filed before this Court, despite the fact that said deposition Notice had originally been served on Mr. Patel (and the Keeper of Records of NEHA Corp.) on January 17, 2004, and required an Order Compelling Discovery before Mr. Patel finally appeared. Even after Mr. Patel's deposition, Mr. Patel's counsel at the deposition agreed to provide plaintiffs' counsel with further records requested at the deposition and through the Subpoenas, but did not.

Pendency Of Prior State Action

First and foremost, there is no pendency of any prior state action against any of the defendants that are a party to the instant Motion To Dismiss, although a Motion To Amend Complaint to add said defendants in the state court action is pending.

Even assuming the instant defendants are added to the state action hereafter, generally, as between state and federal courts, the rule is that "the pendency of an action

Barbara A. Jones, et al v. Ashishkumar S. Patel, et al    USDC Mass Civil #1:05-11411-RWZ
Plaintiffs' Opposition And Memorandum Of Law In Opposition
To The Defendants', Ramanbjati K. Patel, NEHA Corp. d/b/a Quick Stop,
Shankar Corp. d/b/a Dime Redemption Center, and
Highland Convenience, Motion To Dismiss                                         Page  4

in the state court is no bar to proceedings concerning the same matter in the Federal court

having jurisdiction . . . ." *McClellan v. Carland, supra, 217 U.S. at 282, 30 S.Ct. at 505,*

*54 L.Ed., at 767. See Donovan v. City of Dallas, 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d*

*409 (1964).*

    This difference in general approach between state-federal concurrent jurisdiction

and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation

of the federal courts to exercise the jurisdiction given them. *England v. Louisiana State*

*Bd. of Medical Examiners, 375 U.S. 411, 415, 84 S.Ct. 1, 464, 11 L.Ed.2d 440, 444*

*(1964); McClellan v. Carland, supra, 217 U.S., at 281, 30 S.Ct. at 504, 54 L.Ed. at 766;*

*Cohens v. Virginia, 6 Wheat. 264, 404, 5 L.Ed. 257 (1821) (dictum).*  Given this

obligation, and the absence of weightier considerations of constitutional adjudication and

state-federal relations, the circumstances permitting the dismissal of a federal suit due to

the presence of a concurrent state proceeding for reasons of wise judicial administration

are considerably more limited than the circumstances appropriate for abstention.

    No one factor is necessarily determinative; a carefully considered judgment taking

into account both the obligation to exercise jurisdiction and the combination of factors

counselling against that exercise is required. See *Landis v. North American Co., supra,*

*299 U.S. at 254-255, 57 S.Ct. at 165-166, 81 L.Ed. at 158*.

    What is clear is that a federal district court may decline to exercise its jurisdiction

because of parallel state-court litigation only in exceptional circumstances; and only the

Barbara A. Jones, et al v. Ashishkumar S. Patel, et al        USDC Mass Civil #1:05-11411-RWZ
Plaintiffs' Opposition And Memorandum Of Law In Opposition
To The Defendants', Ramanbjati K. Patel, NEHA Corp. d/b/a Quick Stop,
Shankar Corp. d/b/a Dime Redemption Center, and
Highland Convenience, Motion To Dismiss                                    Page  5

clearest of justifications will warrant dismissal.  *Colorado River Water Conservation District v. United States, 424 U.S. 800, 818-819, 96 S.Ct. 1236, 1246-47, 47 L.Ed.2d 483*.

The decision whether to dismiss a federal action on grounds of wise judicial administration does not rest on a mechanical checklist, but on a careful balancing of the important factors (which court first assumed jurisdiction over property involved in the litigation, inconvenience of the federal forum, avoidance of piecemeal litigation, and the order in which the concurrent forums obtained jurisdiction) relevant to the decision as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction. *Ibid.*  Pp. 935-937.

There has been no showing by the defendants of the requisite exceptional circumstances to justify dismissal in this case.  For example, there has been no assumption by either court of jurisdiction over any res or property, or any contention that the federal court is any less convenient to the parties than the state court.   The other factors--avoidance of piecemeal litigation and the order in which the current forums obtained jurisdiction—actually support jurisdiction in the Federal Court – the Federal Court was the first court to obtain jurisdiction over the instant defendants, and there will not be "piecemeal litigation", since the two courts would not render inconsistent judgments.

The defendants argue that the state complaint is "nearly identical" to the Complaint in this matter, but clearly it is not.  The state action does not even contain the

**Barbara A. Jones, et al v. Ashishkumar S. Patel, et al**     **USDC Mass Civil #1:05-11411-RWZ**
Plaintiffs' Opposition And Memorandum Of Law In Opposition
To The Defendants', Ramanbjati K. Patel, NEHA Corp. d/b/a Quick Stop,
Shankar Corp. d/b/a Dime Redemption Center, and
Highland Convenience, Motion To Dismiss                              Page 6

instant defendants.  Nor does the pending state action contain any claim that Ashiskumar Patel was in the course of his employment and/or on the business of the instant defendants.

The defendants also argue that the "state court will adequately protect the interests of the parties".  That it is a disingenuous argument by the instant defendants, since the instant defendants are not even parties which the state court is exercising jurisdiction over.  Thus the state court cannot adequately protect the interests of plaintiffs' against the instant defendants.  Moreover, the instant defendants are not consenting to having the plaintiffs' claims heard in the state court proceeding.  This is evidenced by the instant defendants submission of an Opposition to being added to the state court action, which Opposition was coincidentally submitted on the same date as the instant Motion To Dismiss was filed with this Court [See Exhibit A attached hereto].  The clear result is that the Federal Court may be the only Court to have plaintiffs' claims against the instant defendants adjudicated.  Thus the state court currently <u>will not</u> adequately protect the rights of the plaintiffs.

Even if the instant defendants are added to the state action at some time in the future, the Federal Court would still be a proper place for this case to proceed based upon the factors set forth in *Colorado River Water Conservation District v. United States, 424 U.S. 800, 818-819, 96 S.Ct. 1236, 1246-47, 47 L.Ed.2d 483*; *Moses H. Cone v. Mercury Construction Corp., 460 U.S. 1, 74 L.Ed.2d 765, 103 S.Ct. 927 (1982).*

**Barbara A. Jones, et al v. Ashishkumar S. Patel, et al**          USDC Mass Civil #1:05-11411-RWZ
Plaintiffs' Opposition And Memorandum Of Law In Opposition
To The Defendants', Ramanbjati K. Patel, NEHA Corp. d/b/a Quick Stop,
Shankar Corp. d/b/a Dime Redemption Center, and
Highland Convenience, Motion To Dismiss                                             Page  7

## Conclusion

The plaintiffs' Complaint and Amended Complaint state sufficient claims for

which relief can be granted, pursuant to Fed.R.Civ.P. Rule 12(b)(6).  Additionally, since

the defendants in the instant Motion To Dismiss are not defendants in the state action

(and have filed an Opposition to being added), there is not any "pendency of a prior state

court action", nor any assurances that the plaintiffs' claims will be adequately protected

in the state court.  Thus the Motion To Dismiss must be **DENIED**.

By Plaintiffs' Attorneys,

s/Robert A. Koditek
**KODITEK LAW FIRM**
160 Old Derby Street
Suite 225
Hingham, MA  02043
(617) 328-3800

DATED:  November 18, 2005

**Barbara A. Jones, et al v. Ashishkumar S. Patel, et al**          **USDC Mass Civil #1:05-11411-RWZ**
Plaintiffs' Opposition And Memorandum Of Law In Opposition
To The Defendants', Ramanbjati K. Patel, NEHA Corp. d/b/a Quick Stop,
Shankar Corp. d/b/a Dime Redemption Center, and
Highland Convenience, Motion To Dismiss                              Page  8

## CERTIFICATE OF SERVICE

I, Robert A. Koditek, hereby certify that a true copy of the above document was served upon (each party appearing pro se and/or) the attorney of record for each (other) party by [mailing same (first class mail) ~~(certified mail, return receipt requested)~~ postage pre-paid] ~~[facsimile transmission] [overnight mail/delivery] [delivery/in-hand]~~ [electronically], on this date, to:

Thomas W. Beliveau, Esquire
FULLER, ROSENBERG, PALMER
     & BELIVEAU, LLP
340 Main Street
Suite 817
Worcester, MA  01608

_____
s/Robert A. Koditek

UNITED STATES DISTRICT COURT
DISTRICT MASSACHUSETTS

Civil No.: 1:05-11411-RWZ

_____ )
BARBARA A. JONES,                 )
ROBERT M. JONES,                  )
MOLLY JONES, ppa, and             )
STEVEN JONES, ppa,                )
                                  )
        Plaintiffs,               )
                                  )
vs.                               )
                                  )
ASHISKUMAR S. PATEL,              )
NITESHKUMAR K. PATEL,             )
RAMANBAJTI K. PATEL,              )
NEHA CORP.,                       )
   d/b/a Quick Stop,              )
SHANKAR CORPORATION,              )
   d/b/a Dime Redemption Center,  )
DASHRATHBHAI P. PATEL, and        )
AJAY VARIETY CORP.                )
   d/b/a Highland Variety         )
                                  )
        Defendants.               )
_____ )

**EXHIBIT  A TO**
**PLAINTIFFS' OPPOSITION AND MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS', RAMANBJATI K. PATEL, NEHA CORP. d/b/a Quick Stop,**
**SHANKAR CORP. d/b/a Dime Redemption Center, AND**
**HIGHLAND CONVENIENCE, MOTION TO DISMISS**

_____

COMMONWEALTH OF MASSACHUSETTS

BRISTOL, SS.                                   SUPERIOR COURT DEPT.
                                              Civil Action No. BRCV 2003-0216B


BARBARA A. JONES, ET AL,        )
        Plaintiffs              )
                                )
v.                              )
                                )
ASHISKUMAR S. PATEL, ET AL,     )
        Defendants              )


**PROPOSED DEFENDANTS', NEHA CORP., D/B/A QUICK
STOP, SHANKAR CORPORATION,D/B/A DIME REDEMPTION CENTER,
RAMANBHATI K. PATEL,AJAY VARIETY CORP., D/B/A HIGHLAND
VARIETY AND/OR CONVENIENCE, OPPOSITION TO PLAINTIFFS'
MOTION TO AMEND COMPLAINT**


I.      **INTRODUCTION**

        The proposed defendants, Neha Corp., d/b/a Quick Stop, Shankar Corporation,

d/b/a Dime Redemption Center, Ramanbhati K. Patel, AJAY Variety Corp.. d/b/a

Highland Variety and/or Convenience respectfully request that this Court deny the

plaintiffs' motion to amend complaint.  In opposition to the plaintiffs' motion, the

proposed defendants rely on the following memorandum of law in opposition.

II.     **STATEMENT OF UNDISPUTED FACTS**

        This action arises out of a motor vehicle accident that occurred on July 8, 2002.

The plaintiffs allege that at the time of the accident, a vehicle being operated by

Ashiskumar Patel collided with a vehicle being operated by the plaintiff, Barbara A.

Jones, thereby causing personal injury to the plaintiff. Niteshkumar Patel owned the vehicle being operated by Ashiskumar Patel.

This action was filed on February 26, 2003. A pre-trial conference was held in this matter on May 9, 2005, and a trial date was set for January 6, 2006. On June 30, 2005, Ramanbhati K. Patel was deposed in connection with this action as a non-party witness. On July 6, 2005, the plaintiffs filed a similar action in the United States District Court for the District of Massachusetts, which included Ramanbhati K. Patel, Neha Corp., d/b/a Quick Stop, Shankar Corporation, d/b/a Dime Redemption Center and Highland Convenience as defendants. On October 29, 2005, the plaintiffs served this motion to amend the complaint upon the named defendants, Ashiskumar Patel and Niteshkumar Patel only.

The plaintiffs seek to move this court to amend their complaint to include the proposed defendants, Neha Corp., d/b/a Quick Stop, Shankar Corporation, d/b/a Dime Redemption Center, Ramanbhati K. Patel, AJAY Variety Corp., d/b/a Highland Variety and/or Convenience and add new claims against the proposed defendants. The reasons given for the belated motion to amend is simply that based upon discovery, the named defendants "may have been on the business of some and/or all of the [proposed] defendants sought to be added, at the time of the collision." Although, the discovery deadline in this matter was February 27, 2005, the plaintiffs waited until after the discovery deadline expired and a trial date had been set to file their motion to amend the complaint. The plaintiffs did not notify the proposed defendants of the motion to amend. The proposed defendants only learned of the motion to amend through counsel for the

other named defendants. Neither Niteshkumar Patel nor Ashiskumar Patel are related the

proposed defendant, Ramanbhati Patel.

## III.   STANDARD OF REVIEW

After a responsive pleading has been filed leave of court is required to amend a

pleading. Mass.R.Civ.P. 15(a); Castellucci v. U.S. Fidelity & Guaranty Company, 372

Mass. 288 (1977). Allowance or denial of amendments sought pursuant to Mass.R.Civ.P.

15(a) is discretionary. Leonard v. Town of Brimfield, 423 Mass., 152 (1996). The

reasons for denying a motion include bad faith, undue delay, dilatory motive, repeated

failure to cure deficiencies by amendments previously allowed, undue prejudice to the

opposing party by virtue of allowance of the amendment, or futility of the amendment.

Castellucci, 372 Mass. at 290. The "preferable practice for a party seeking to add a new

party is to give the proposed party notice of the motion to amend to provide an

opportunity to file an opposition and request a hearing." Srebnick v. Lo-Law Transit

Management, Inc., 29 Mass.App.Ct. 45 (1990).

"[A]n unexcused delay in seeking to amend is a valid basis for denial of a motion

to amend." Mathis v. Massachusetts Electric Co., 409 Mass. 256, 264-265 (1991) (delay

of four years without reason for delay justified denial of motion); Walsh v. Chestnut Hill

Bank & Trust Co., 414 Mass. 283, 286-287 (1992); Christopher v. Duffy, 28

Mass.App.Ct. 780 (1990) (delay of six years in seeking to add defendant unfairly

prejudicial and justified denial of motion); Barbosa v. Hopper Feeds, Inc., 404 Mass. 610,

621-622 (1989) (unexcused delay is a valid basis for denial of a motion to amend); see

also Grant v. News Group Boston, Inc., 55 F.3d 1, 12 (1st Cir. 1995) (court's denial of

motion to amend after discovery deadline not abuse of discretion). "Where . . .

considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has the burden of showing some valid reason for his neglect and delay." Grant, 55 F. 3d at 15; see also Hayes v. New England Millwork Distributors, Inc., 602 F.2d 15, 19-20 (1st Cir. 1979)(holding seventeen-month delay between initiation of action and filing of motion to amend, served ten days prior to close of discovery, to be undue).

## IV.    ARGUMENT

### A.    The plaintiffs have failed to meet their burden of showing a valid reason for their neglect and delay.

The plaintiffs have the burden of showing some valid reason for their neglect and delay in waiting almost three years to file a motion to amend the complaint. The plaintiffs have offered no reasonable explanation, but merely indicate that information was discovered as a result of Ramanbhati Patel's deposition on June 30, 2005. The plaintiffs state in their motion that the deposition of Ramanbhati Patel was conducted as a result of a motion, as well as, orders to compel. Ramanbhati Patel explained at his deposition that the first notice of deposition that he received was not in his name and he did not understand what was going on. (Deposition of Ramanbhati Patel, attached as Exhibit A, p. 10). Further, the plaintiffs did not file a motion to compel discovery against Ramanbhati Patel and the Neha Corp. until November 9, 2004, almost two years after the filing of the original complaint. The plaintiff filed previously two motions to extend the discovery deadline in this matter, which were allowed by the court. The plaintiffs have offered no explanation for why they delayed in filing this motion to amend the complaint after being granted two extensions of the discovery deadline and nearly three years after

the initial complaint was filed. Accordingly, the plaintiff's have offered no reasonable

explanation for the delay and, therefore, the plaintiffs' motion to amend the complaint

should be denied.

**B.** **The proposed defendants will be unduly prejudiced.**

The proposed defendants will be unduly prejudiced by an allowance of the

plaintiffs' motion because they will not have a reasonable opportunity to investigate the

claims made by the plaintiffs and to marshal evidence that may support a defense.

The plaintiffs' motion seeks to amend the complaint to include the proposed defendants,

as well as, a claim aimed at "piercing the corporate veil against the corporations and/or

businesses" owned by Ramanbhati Patel and Dashrathbai Patel. The plaintiffs are also

alleging that Ashiskumar Patel, the driver of the vehicle, was working for one or both of

the proposed defendant's at the time of the collision. In order to adequately prepare a

defense, the defendants will need time to conduct discovery, however, a trial has been

scheduled in this matter for January 6, 2006 and the discovery deadline has passed. The

plaintiffs' motion should also be denied on the grounds that its allowance would result in

undue prejudice to the proposed defendants.

**C.** **The plaintiffs' motion is futile.**

The plaintiff's motion should be denied on the ground that it would be futile to

allow the plaintiffs' motion, as the trial has been scheduled for January 6, 2006 and

discovery has not revealed sufficient evidence to support the plaintiffs' claims against the

proposed defendants. The plaintiffs do not allege any facts to support their claim that

Ashiskumar Patel was acting in the course of his employment with the defendants at the

time of the collision. He was driving an automobile owned by Niteshkumar Patel.

Ramanbhati Patel testified at his deposition that Ashiskumar Patel was his friend's son and that Ashiskumar Patel was never employed by any of his businesses. (Exhibit A, p. 29, 33, 39). Further, there is no evidence to support the plaintiffs' claim that the court should pierce the corporate veil in this case and hold Ramanbhati Patel personally liable for the plaintiffs' injuries.

## V.   CONCLUSION

The incident giving rise to this action occurred on July 8, 2002. At the time of accident, Ashiskumar Patel was operating a vehicle owned by Niteshkumar Patel. Ashiskumar Patel was not an employee of any of the proposed defendants at the time of the accident and, therefore, was not acting within the scope of his employment at the time of the collision. The plaintiffs have delayed nearly three years from the filing of the original complaint to bring a motion to amend their complaint and have not offered a sufficient basis for the delay. The proposed defendants would be prejudiced by the allowance of this motion because they will not have a reasonable opportunity to investigate the claims made by the plaintiffs and to marshal evidence that may support a defense, as the trial in this matter is scheduled for January 6, 2006 and the discovery

deadline has lapsed. The plaintiffs' motion is futile because there is no evidence to

support the plaintiffs' claims against the proposed defendants. Accordingly, the propos

defendants respectfully request that this Court deny the plaintiffs' motion.

Respectfully Submitted,

PROPOSED DEFENDANTS. NEHA
CORP., D/B/A QUICK STOP. SHANKA
CORPORATION, D/B/A DIME
REDEMPTION CENTER, RAMANBHA
K. PATEL, AJAY VARIETY CORP.,
D/B/A HIGHLAND VARIETY AND/OR
CONVENIENCE
By their Attorney,

Thomas W. Beliveau, Esquire
FULLER, ROSENBERG. PALMER
& BELIVEAU
340 Main Street, Suite 817
Worcester, MA 01608
(508) 751-5121
BBO #548001

Date: November 8, 2005

## CERTIFICATE OF SERVICE

I, Thomas W. Beliveau, hereby certify that a copy of the foregoing document, PROPOSED DEFENDANTS', NEHA CORP., D/B/A QUICKSTOP, SHANKAR CORPORATION, D/B/A DIME REDEMPTION CENTER, RAMANBHATI K. PATEL,AJAY VARIETY CORP., D/B/A HIGHLAND VARIETY AND/OR CONVENIENCE, OPPOSITION TO PLAINTIFFS' MOTION TO AMEND COMPLAINT, was mailed on this 8THth day of November, 2005 to all counsel of record as follows:

Robert A. Koditek, Esquire
Koditek Law Firm
160 Old Derby Street, Suite 225
Hingham, MA 02043

Benjamin Whitney, Esquire
Lynch & Lynch
45 Bristol Drive
South Easton, MA 02375

Thomas W. Beliveau, Esquire

EXHIBIT A

## SHEET 1    PAGE 1

BRISTOL, ss.                    SUPERIOR COURT
                                Exhibits
                                1-4.5

*********************************

BARBARA JONES, ROBERT JONES,
MOLLY JONES, PPA, and STEPHEN
JONES, PPA,
                Plaintiffs
VS.
                                Docket No.
ASHISKUMAR S. PATEL and         BRCV2003-00216B
NITESHKUMAR K. PATEL,
                Defendants
*********************************

DEPOSITION of RAMAN V. PATEL, a Witness
called by Counsel on behalf of the Plaintiffs, pursuant
to the applicable Massachusetts Rules of Civil
Procedure, before Beverly M. Garvey, a Certified Court
Reporter and Notary Public in and for the Commonwealth
of Massachusetts, at the Law Office of Robert Koditek,
21 McGrath Highway, Suite 404, Quincy, Massachusetts,
on Thursday, June 30, 2005, commencing at 3:04 p.m.

---

### PAGE 3

                                Page 3
                    I N D E X
Witness                        Direct    Cross
Raman V. Patel
    (by Mr. Koditek)             5
    (by Mr. Whitney)                     (None)
    (by Mr. Pearlman)                    (None)
                E X H I B I T S
Number      Description                  Page
                (Retained by Counsel)
Plaintiff's
Exhibit No. 1     Renotice of Deposition    10
Exhibit No. 2     Business certificate      12
Exhibit No. 3.1   Payroll record           13
Exhibit No. 3.2   Payroll record           13
Exhibit No. 4.1   W2 Vasu Dev Patel        13
Exhibit No. 4.2   Handwritten document     13
Exhibit No. 4.3   Employee detail          13
Exhibit No. 4.4   W2 Neha Corporation      13
Exhibit No. 4.5   Employee detail          13
*(Indicates phonetic spelling)

---

### PAGE 2

APPEARANCES:
Robert A. Koditek, Esq.
21 McGrath Highway
Suite 404
Quincy, MA  02169
REPRESENTING THE PLAINTIFFS
Benjamin Whitney, Esq.
Lynch & Lynch
45 Bristol Drive
South Easton, MA  02375
REPRESENTING THE DEFENDANTS
Arthur N. Pearlman, Esq.
Jonathan Maynard Building
P.O. Box 2507
Framingham, MA  01701
REPRESENTING THE WITNESS

---

### PAGE 4

                                Page 4
1        S T I P U L A T I O N S
2        It is hereby stipulated and agreed by
3   and between Counsel that the deposition will be
4   read and signed within thirty days of receipt under
5   the pains and penalties of perjury.
6        It is further stipulated and agreed that
7   all objections, except objections as to the form of
8   the question and motions to strike, are reserved to
9   the time of trial.
10                    *
11        RAMAN V. PATEL, first being duly sworn,
12  on oath, was questioned and testified as follows:
13                    *
14        MR. KODITEK:  Good afternoon, Mr.
15  Patel.  My name is Robert Koditek, and I represent
16  the Plaintiffs in this lawsuit against Ashiskumar
17  Patel and Niteshkumar Patel.
18        Just to give you a couple of ground
19  rules so that you understand; have you ever been
20  deposed before?
21        THE WITNESS:  First time.
22        MR. KODITEK:  I will be asking you
23  questions.  All responses you make have to be
24  verbal.  You can't nod heads like that because she

SHEET 2  PAGE 5

Page 5

```
1    needs to take them down.
2              THE WITNESS:  Sure.  No problem.
3              MR. KODITEK:  All right.  I will not
4    ask you another question until you finish your
5    answer and I would ask you not to answer it until I
6    finish my question so that there's only one of us
7    talking at one time so that she can take it down.
8              THE WITNESS:  No problem.
9              MR. KODITEK:  If you need a break at
10   any time you can ask for a break.  The only time I
11   would ask you to wait is if I ask you a question,
12   finish the question and then you can take a break.
13             THE WITNESS:  No problem.
14             DIRECT EXAMINATION
15   (By Mr. Koditek)
16   Q   Would you state your name.
17   A   Raman Patel.
18   Q   How do you spell your first name?
19   A   R-a-m-a-n B-a-j-t-I K Patel, K is the middle name.
20       Patel, P-a-t-e-l.
21   Q   Where do you reside?  Where do you live?
22   A   22 Long Drive, Westborough, Mass. 01581.
23   Q   How long have you lived there?
24   A   Five or six years, something like that.
```

PAGE 6

Page 6

```
1    Q   What's your date of birth?
2    A   ████████
3    Q   And your Social Security number?
4    A   ████████
5    Q   Are you currently a U.S. citizen?
6    A   Yeah.
7    Q   Were you born in the U.S.?
8    A   No.
9    Q   Where were you born?
10   A   India.
11   Q   When did you come to the United States?
12   A   1984.
13   Q   How old were you at that time?
14   A   Around twenty-five, twenty-six.
15   Q   Why did you come to the U.S.?
16   A   I got the visa to visit.  I came to visit.
17   Q   Friends or relatives?
18   A   No friends.
19   Q   No friends.  Relatives?
20   A   No relatives, no friends.  I just came to visit.
21   Q   Did you come to this area first or did you go to
22       another area?
23   A   Atlantic City.
24   Q   Did you do some gambling there too?
```

PAGE 7

Page 7

```
1    A   Yeah, I start from there.
2    Q   Did you go to school in India?
3    A   Yeah.
4    Q   What grade did you reach?
5    A   Graduate.  Commerce graduate.
6              MR. PEARLMAN:  It's like a business
7        school, college.  School of management or
8        something.
9    Q   When did you come up to the Massachusetts area?
10   A   Around '95 or something, '97.
11   Q   Was there any particular reason why you came up to
12       this area?
13   A   Just for the business.
14   Q   What business was that?
15   A   Convenience store.
16   Q   When did you get into the convenience store
17       business?
18   A   1988.
19   Q   In New Jersey?
20   A   New York.
21   Q   Did you own any stores down there in New York?
22   A   Yeah.
23   Q   How many?
24   A   One.
```

PAGE 8

Page 8

```
1    Q   One.  Do you still own any stores down there?
2    A   No.
3    Q   When you came to Massachusetts around '95, '97
4        area, did you still only own one store in New York
5        prior to that?
6    A   No.
7    Q   How many did you own?
8    A   In New York?
9    Q   Yes.
10   A   Nothing.
11   Q   So, you sold it at some point in time?
12   A   Yeah.
13   Q   Did you sell it before you came to Massachusetts?
14   A   No.  Sold maybe one year or two years ago.
15   Q   You just sold it one or two years ago.  So, you
16       owned it --
17   A   Somebody run it over there for me.
18   Q   Do you own convenience stores in Massachusetts now?
19   A   Yeah.
20   Q   How many?
21   A   Three or four stores.
22   Q   Do you know where they are?
23   A   One is Lynn.  Lynn.
24   Q   Lynn, okay.
```

Page 9

| | | |
|---|---|---|
| 1 | A | One is the Southborough, one is the Northborough. |
| 2 | | One is the Norton. |
| 3 | Q | Is there any more? |
| 4 | A | There's three that I own. |
| 5 | Q | I didn't get that. |
| 6 | | MR. PEARLMAN: There's three that he |
| 7 | | owns. |
| 8 | Q | Do you own stores any other place other than |
| 9 | | Massachusetts? |
| 10 | A | Yeah. |
| 11 | Q | Where? |
| 12 | A | New Hampshire. |
| 13 | Q | How many? |
| 14 | A | One. |
| 15 | Q | Any place else? |
| 16 | A | No. |
| 17 | Q | The store in Norton is known as Quick Mart? |
| 18 | A | Quick Stop. |
| 19 | Q | What's the store in Lynn known as? |
| 20 | A | Dime Redemption Center. |
| 21 | Q | What's the one in Southborough called? |
| 22 | A | Fitzgerald's. |
| 23 | Q | How do you spell that? |
| 24 | | MR. PEARLMAN: That's Fitzgerald's? |

Page 10

| | | |
|---|---|---|
| 1 | | THE WITNESS: Fitzgerald's. |
| 2 | | MR. PEARLMAN: Fitzgerald's General |
| 3 | | Store. |
| 4 | | (Attorney Whitney enters deposition) |
| 5 | | MR. KODITEK: Let the record reflect |
| 6 | | that Mr. Whitney has arrived. |
| 7 | | (Whereupon, the below-described |
| 8 | | Renotice was marked Plaintiff's |
| 9 | | Exhibit No. 1.) |
| 10 | Q | (by Mr. Koditek) Mr. Patel, I've marked as Exhibit |
| 11 | | Number One the Renotice of Taking Deposition. Have |
| 12 | | you seen that before? |
| 13 | | (Witness views document) |
| 14 | A | This one? |
| 15 | Q | Yes. |
| 16 | A | I get in the mail come something, but in my wrong |
| 17 | | name, you know. I don't know about this. I don't |
| 18 | | know what's going on there, you know. |
| 19 | Q | You say it's in the wrong name? |
| 20 | A | Yeah. One I get the first time is -- is not my |
| 21 | | right name, you know. |
| 22 | Q | Is that in your right name now? |
| 23 | A | Yeah. |
| 24 | Q | That one is. The first one wasn't? |

Page 11

| | | |
|---|---|---|
| 1 | A | Yeah. Vajti* is wrong name. |
| 2 | Q | Vajti is wrong name? |
| 3 | A | Yeah. |
| 4 | Q | It's a B? |
| 5 | A | Yeah. B. |
| 6 | Q | But you are the person that owns the Norton Quick |
| 7 | | Stop? |
| 8 | | MR. PEARLMAN: No, the corporation does. |
| 9 | A | Corporation. |
| 10 | Q | And that corporation is -- |
| 11 | A | I'm the president of the Quick Stop. |
| 12 | Q | And the corporation that owns it is N-E-H-A Corp., |
| 13 | | is that correct? |
| 14 | A | Neha Corporation. |
| 15 | Q | Okay, N-E-H-A Corp., is that correct? |
| 16 | A | No. |
| 17 | | MR. PEARLMAN: He's spelling it. He |
| 18 | | spelled N-E-H-A. |
| 19 | A | N-E-H-A, Neha Corporation, that's right. |
| 20 | Q | Let me show you a document that I'll mark exhibit |
| 21 | | two. |
| 22 | | (Whereupon, the below-described |
| 23 | | business certificate was marked |
| 24 | | Plaintiff's Exhibit No. 2.) |

Page 12

| | | |
|---|---|---|
| 1 | | (Witness views document) |
| 2 | A | Yeah. |
| 3 | Q | Is that something that you completed and filed? |
| 4 | A | What do you mean? |
| 5 | Q | Did you complete that form? |
| 6 | A | Yeah. |
| 7 | Q | Did you sign it? |
| 8 | A | Yeah. |
| 9 | Q | That shows that it's Neha Corp. that's doing |
| 10 | | business as Quick Stop in Norton? |
| 11 | A | Yeah. |
| 12 | Q | In Exhibit One there is a list of documents to |
| 13 | | produce. I believe if you turn to page three maybe |
| 14 | | in the Deposition Subpoena. Starting with page |
| 15 | | five in the Deposition Subpoena. Have you seen |
| 16 | | that list of documents before? |
| 17 | | (Witness views document) |
| 18 | | MR. PEARLMAN: I told you about it. |
| 19 | A | Yeah. Arthur told me and I talked with my |
| 20 | | accountant, and what all these for I tell Arthur. |
| 21 | Q | On April 26th your attorney faxed over to me two |
| 22 | | records or two sheets that are responsive to those |
| 23 | | requests. |
| 24 | A | Yeah. |



SHEET 4   PAGE 13

Page 13

1       MR. KODITEK: Why don't I mark these
2   Exhibits 3.1 and 3.2.
3           (Whereupon, the below-described
4           employee certificates were
5           marked Plaintiff's Exhibit
6           Numbers 3.1 and 3.2.)
7   Q   Have you produced other documents today responsive
8      to those requests?
9   A   Yeah.
10   Q   Five additional pages?
11   A   Yeah.
12       MR. KODITEK: Why don't I have these
13   marked exhibits 4.1 through 4.5.
14           (Whereupon, the below-described
15           documents were marked
16           Plaintiff's Exhibit Numbers 4.1
17           through 4.5.)
18   Q   Are there any other documents that you're aware of
19      that exist right now that are responsive to these
20      requests?
21   A   Which one is that?
22   Q   Any of them.
23       MR. PEARLMAN: Are there any other
24   documents we have that answer that. You're relying

PAGE 14

Page 14

1      upon me, but I can't find any.
2   A   I would say no. The accountant and every -- no.
3   Q   Who is your accountant?
4   A   Bhrat Thakkar.
5   Q   Who is it?
6   A   B-H-R-A-T.
7   Q   B-E-R-A-T.
8   A   Thakkar, T-H-A-K-K-A-R.
9   Q   T-H- --
10   A   A-K-K-A-R.
11   Q   Where is he located?
12   A   New Jersey.
13   Q   Do you know where in New Jersey?
14   A   I have a telephone number.
15   Q   Do you have that?
16   A   Yeah.
17   Q   What is it?
18   A   732-321-9020.
19   Q   Does Mr. Thakkar have all your business records
20      from all your convenience stores?
21   A   Yeah, he's got them.
22   Q   Quick Stop is under the corporate name Neha Corp.?
23   A   Yeah.
24   Q   The Lynn store is under the corporate name

PAGE 15

Page 15

1   Shankar*?
2   A   Shankar.
3   Q   What is the Southborough store under?
4   A   BKB.
5   Q   BKB?
6   A   Yeah.
7   Q   Corp.?
8   A   Yeah.
9   Q   Is there anyone else other than your accountant who
10      may have any records that are responsive to this
11      request?
12   A   No.
13   Q   Let me show you what has been marked as Exhibit 3.1
14      and 3.2. Can you tell me what those are?
15       (Witness views documents)
16   A   This one?
17       MR. PEARLMAN: This is '02 employee
18      payment. 3.2 is for '03. Same thing, payroll
19      records for Nitesh.
20   A   Working over there in the Lynn, Nitesh, at that
21      time.
22   Q   Nitesh is also known as Nick?
23   A   Yeah.
24   Q   Just so I can refer to him as Nick.

PAGE 16

Page 16

1      During the time period between it looks
2   like March of 2002 through the end of December 2002
3   he was paid from Shankar Corporation?
4   A   Yeah, whatever the paper say.
5   Q   Was he paid at any other store that you owned
6      during that time period?
7   A   Not that I know.
8   Q   Did he work at any other store that you owned
9      during this time period?
10   A   No.
11   Q   Did he work at the Norton store at any time?
12   A   Not in my knowledge.
13   Q   How well do you know Nick?
14   A   A couple of years.
15   Q   Do you know him to be an honest person?
16       MR. WHITNEY: Objection.
17   A   He's not bad person.
18   Q   Well, if I were to tell you that he testified under
19      oath that he was working in the Norton store for a
20      period of two to three months, would that --
21   A   Not in my knowledge.
22   Q   Is there anybody else who would have knowledge of
23      him working in that store?
24   A   I'm not sure at that time. I can not remember

SHEET 5  PAGE 17

Page 17

| 1 | | every store and I don't know what's going on over |
| 2 | | here, you know. I can not keep in the mind for |
| 3 | | who's working over there, who's working over there. |
| 4 | | Hanging around all the people, go over there, go |
| 5 | | over there, like young kids, youngster go himself. |
| 6 | | But I don't know -- in my knowledge he's not work |
| 7 | | over there. |
| 8 | Q | Who ran the store in Norton in July of 2002? |
| 9 | A | Myself. |
| 10 | Q | How often were you in that store? |
| 11 | A | Every day. |
| 12 | Q | Did you ever see Nick in that store in July? |
| 13 | A | I'm not sure at that time who was around there, no. |
| 14 | Q | Did you ever reassign Nick to another store you |
| 15 | | owned from the Lynn store? |
| 16 | A | No. |
| 17 | Q | Did you ever reassign any other employees working |
| 18 | | at one store to another store? |
| 19 | A | Sometimes somebody go in and somebody -- he go |
| 20 | | himself, I don't know, you know. Somebody -- the |
| 21 | | employee tell each other, know more than us. Then |
| 22 | | maybe he's a person of religion and he's moving |
| 23 | | around there. I don't know about their things. |
| 24 | | MR. PEARLMAN: Hold on. Can we go off |

PAGE 18

Page 18

| 1 | | the record for a minute? |
| 2 | | MR. KODITEK: Yes. |
| 3 | | (Off the record) |
| 4 | Q | Can you tell me who ran the store in July of 2002? |
| 5 | A | I'm not remembering. |
| 6 | Q | You don't remember who ran the store in Norton? |
| 7 | A | What about this is just the -- no. |
| 8 | Q | Well, the payroll is from the Lynn store, not the |
| 9 | | Norton store. |
| 10 | A | The Norton store would have -- does payroll. |
| 11 | | MR. PEARLMAN: These are for '03 and |
| 12 | | '04, not for '02. See, you must not have asked for |
| 13 | | the name, this is the only name that you asked for, |
| 14 | | records of, Vasu Dev, that we got you. |
| 15 | A | Must be Vasu Dev is in charge of one year, two |
| 16 | | years. |
| 17 | | MR. PEARLMAN: Who was in charge before? |
| 18 | | THE WITNESS: Before then I can not |
| 19 | | remember. |
| 20 | A | It must be Vasu Dev the last one or two years. |
| 21 | | MR. PEARLMAN: '03 and '04 it shows he |
| 22 | | came in '03 and '04. |
| 23 | Q | Let me ask you this then; in July of 2002 somebody |
| 24 | | else was running the store on a day-to-day basis? |

PAGE 19

Page 19

| 1 | A | What do you mean? |
| 2 | Q | On a daily basis there was someone else actually |
| 3 | | running the store in Norton? |
| 4 | A | Yeah, mostly Vasu Dev Patel is running over there. |
| 5 | | Vasu Dev. |
| 6 | | MR. PEARLMAN: Now. |
| 7 | | THE WITNESS: No, before. |
| 8 | A | Last two years it must be Vasu Dev. |
| 9 | | MR. PEARLMAN: Do you know who was |
| 10 | | there in 2002 though? |
| 11 | | THE WITNESS: It was -- |
| 12 | Q | (by Mr. Koditek) Is there anybody who would know |
| 13 | | who was there in 2002? |
| 14 | A | My accountant must know -- |
| 15 | Q | Your accountant would know, okay. Is that because |
| 16 | | there are records of employees from 2002 that he |
| 17 | | would have? |
| 18 | A | Yeah. |
| 19 | Q | How many employees in July of 2002 did you have at |
| 20 | | the Norton store? |
| 21 | A | One or two. |
| 22 | Q | What were the usual hours of operation of the |
| 23 | | Norton store in July of 2002? |
| 24 | A | 7:00 to 9:00. |

PAGE 20

Page 20

| 1 | Q | 7:00 a.m. to 9:00 p.m.? |
| 2 | A | Yeah. Depend on the weather, you know, sometimes |
| 3 | | we close early, sometimes we close -- we get the |
| 4 | | highway business. |
| 5 | Q | During that 7:00 a.m. to 9:00 p.m. how many |
| 6 | | employees at any one time would be in the store? |
| 7 | A | One person. |
| 8 | Q | One person. And then when the second employee |
| 9 | | comes in he replaces the other one? |
| 10 | A | Yes. |
| 11 | Q | So, there's not two people working at any one time? |
| 12 | A | (Witness shakes head.) |
| 13 | Q | Do employees go out for errands for any purpose? |
| 14 | A | What do you mean? |
| 15 | Q | Do they go out for errands to do things for the |
| 16 | | business? |
| 17 | A | What do you mean, errands? |
| 18 | Q | Let me ask it another way. Do people go to the |
| 19 | | bank to make deposits? |
| 20 | A | My son goes. |
| 21 | Q | Your son goes. Who is your son? |
| 22 | A | Ajay. |
| 23 | Q | How do you spell that? |
| 24 | A | A-J-A-Y. |

SHEET 6   PAGE 21

## Page 21

1   Q   A-J-A-Y. Does he go to various stores and pick up
2      money to make deposits at banks?
3   A   (Witness nods.)
4   Q   Yes?
5   A   Yeah.
6   Q   What stores does he go to?
7   A   Norton. That's it.
8   Q   That's it?
9   A   Yeah.
10   Q   How often does he do that?
11   A   He bring two and go in the store and deposit it,
12      something like that.
13   Q   How many times a week does he go to the store to do
14      that?
15   A   Almost every day.
16   Q   Do you know about what time period he goes?
17   A   I don't know. Twelve o'clock, something, one
18      o'clock.
19   Q   Where does Ajay live?
20   A   With me.
21   Q   What bank does he go to?
22   A   Norton Savings Bank, something.
23   Q   Is that the only bank that Quick Stop uses?
24   A   Yeah.

## Page 22

1   Q   Do you know what branch?
2   A   Norton.
3   Q   Is there a branch in particular that they go to?
4   A   Norton.
5   Q   Have you ever used any other banks other than the
6      Norton Savings Bank?
7   A   No.
8   Q   Looking at Exhibit 4.1 it looks like this is a W2
9      form for a Vasu Dev Patel?
10      (Witness views document)
11   A   Mm-mm.
12   Q   Is that for his work at Quick Stop in 2003?
13   A   Yeah. Island* Street.
14   Q   Excuse me?
15      MR. PEARLMAN: That's where he lives.
16   Q   Would your accountant also have records from 2002?
17   A   He has all records.
18   Q   Do you know if he ever disposes of his records at
19      any point in time?
20   A   I don't know.
21   Q   Let me show you what has been marked as Exhibit
22      4.2. Can you tell me what that is?
23      (Witness views document)
24   A   That is the business record, how you keep the

PAGE 23

## Page 23

1      business, you know, whoever would work over there.
2   Q   Who would work over where?
3   A   My store.
4   Q   Which store?
5   A   Quick Stop. The daily business, an account of
6      daily.
7   Q   I don't understand what you said. Can you repeat
8      that?
9   A   He write down the account like every day who was
10      working at the night time, --
11   Q   Yeah.
12   A   -- count the money and everything.
13   Q   Okay.
14   A   Whatever is the pay out, whatever is the cash over
15      there. Whatever is the balance over there he put
16      in the bank.
17   Q   Okay.
18   A   And this time the balance over there the like
19      hundred dollar bill, that's it.
20   Q   So, every day you have one of these sheets.
21   A   Every day.
22   Q   And this one is for July 8, 2002.
23   A   Yeah.
24   Q   There is a name at the top there?

PAGE 24

## Page 24

1   A   No.
2   Q   What's that?
3   A   There's a God name, Jahanoma*.
4   Q   What kind of name?
5   A   Is the God name, God.
6      MR. PEARLMAN: A God. It's a God, it's
7      not a person.
8   Q   Do you know who completed this form?
9   A   Yeah.
10   Q   Who?
11   A   Maybe Baba.
12   Q   Who's Baba?
13   A   He's my nephew.
14   Q   How do you spell his name?
15   A   B-A-B-A, Baba.
16   Q   B-A-B-A?
17   A   Yeah.
18   Q   Patel?
19   A   Patel.
20   Q   Where does he live?
21   A   Maybe is -- what do say -- Salem, New Hampshire.
22   Q   Does he work for Quick Stop?
23   A   I don't know at that time he's working or not.
24   Q   Do you know why Baba would be doing this for Quick

SHEET 7   PAGE 25

Page 25

```
 1        Stop?
 2    A   Sometimes he goes around there, you know.
 3    Q   He what?
 4    A   Sometimes he went over there.  If Ajay is not there
 5        sometimes Baba go around the bank, deposit
 6        something.  But look like he's riding, that's what
 7        I'm say.  If Baba is there that day, I don't know.
 8    Q   So, if Ajay didn't do bank deposits Baba would?
 9    A   Yeah.
10    Q   Would Ajay do the same type of form on days that he
11        made deposits?
12    A   Yeah.
13    Q   Are there any other records that Quick Stop
14        maintains on a daily basis other than this record?
15    A   No.
16    Q   Do you have a schedule of employees for any week?
17    A   No schedule.
18    Q   What was that?
19    A   No schedule.
20    Q   Of any employees?
21    A   No.
22    Q   Do you keep employee folders?
23    A   We have two employees, how they need a folder, you
24        know.
```

PAGE 26

Page 26

```
 1                MR. PEARLMAN: Well, he's asking.  The
 2        answer is no.
 3    A   No.
 4    Q   Do you keep any records of people you hire?
 5    A   Yeah.  If I hire them I will keep the record.
 6    Q   What record would you keep?
 7    A   His name and Social Security, like that.  The
 8        application form.
 9    Q   Where do you keep those records?
10    A   In the store.
11    Q   In the particular stores?
12    A   Yeah.  Then he fax it, the accountant's office.
13    Q   Then you send it -- you fax it to the accountant?
14    A   Yeah.
15    Q   So, do you keep the original and he has a copy?
16    A   Yeah.
17                MR. PEARLMAN: Time out for one second.
18        Off the record.
19                (Off the record)
20    Q   Do you have any employee records or employee files
21        of Nick Patel?
22    A   No.
23    Q   Would your accountant have them?
24    A   Yeah, probably they have it.  Yeah.
```

PAGE 27

Page 27

```
 1    Q   Well, I'm talking records such as applications,
 2        Social Security number, green card, immigration --
 3    A   Not like that kind.  Just get the name and the
 4        Social Security pass them most of the time to the
 5        accountant.  Not like made a special file and
 6        keeping a recording, no.
 7    Q   Do you understand that by federal law you're
 8        required to have certain documents on hand for
 9        certain employees?
10                MR. PEARLMAN:   If you don't know, you
11        don't know.
12    A   I don't know.
13    Q   Do you have an attorney for your businesses?
14    A   Closing attorney only.
15    Q   Excuse me?
16    A   At the closing time the attorney?
17    Q   No, no.  Attorney that you contact from time to
18        time about business matters.
19    A   No.
20    Q   Did Quick Stop have a telephone in July of 2002?
21    A   There was telephone there.
22    Q   Were there monthly bills received for that phone?
23    A   Yeah.
24    Q   Do you maintain those bills and keep them?
```

PAGE 28

Page 28

```
 1    A   I don't know.
 2    Q   What happens to --
 3    A   You write out the check and pay the company.
 4    Q   Who was your phone company at that time?
 5    A   I don't remember.
 6    Q   Who's your phone company now?
 7    A   I don't know.  Maybe Verizon.
 8    Q   Do you know what the phone number is there?
 9    A   Yes.
10    Q   What is it?
11    A   508-385-6009.
12    Q   Was that the same phone number in July of 2002?
13    A   Yeah.
14    Q   Do you know an Ashiskumar Patel?
15    A   Yeah.
16    Q   Is he known as Andy?  Is Ashiskumar also known as
17        Andy?
18    A   Andy?
19    Q   No?
20    A   I don't know.
21    Q   How do you know him as?  What name do you use for
22        him?
23    A   Ashis.
24    Q   A-S-H-I-S?
```

SHEET 8  PAGE 29

Page 29

```
 1    A   Yeah.
 2    Q   How do you know Ashis?
 3    A   He's my friend's son.
 4    Q   Who is your friend?
 5    A   Suresh Patel.
 6    Q   How do you know Suresh?
 7    A   I went to college in India, one college.
 8    Q   When did you first meet Ashis?
 9    A   He came from Chicago.
10    Q   Do you know what he was doing in Chicago?
11    A   I don't know.
12    Q   Do you know what Suresh was doing in Chicago?
13    A   Came to visit.
14    Q   He came to visit in Chicago?
15    A   Yeah.
16    Q   Do you know who he went to visit?
17    A   I don't know.
18    Q   Do you have any friends or relatives in Chicago?
19    A   No.
20    Q   Did Ashis ever work at Quick Stop?
21    A   No.
22    Q   Do you know that Ashis stated under oath that he
23        worked at Quick Stop?
24            MR. PEARLMAN:  He wouldn't know that.
```

PAGE 30

Page 30

```
 1        He's never seen the deposition.
 2            MR. KODITEK:  Okay.
 3            THE WITNESS:  What is it?
 4    Q   Would you dispute any statement made by Ashis that
 5        he did work at Quick Stop in 2002?
 6    A   He never work over there.
 7    Q   He never worked there?  Is that a yes, he never
 8        worked there?
 9    A   Never work over there.  Whatever he say, everything
10        is wrong.
11    Q   Does Ashis, to your knowledge, say things to you
12        that are wrong?
13    A   If he say -- I don't know.
14    Q   Well, do you know him to say things that are wrong?
15    A   I don't know.
16    Q   Has he ever said something to you that was wrong?
17    A   No.
18    Q   At some point in time Suresh moved his family to
19        Massachusetts?
20    A   Yeah.
21    Q   Do you know when that was?
22    A   I don't remember, but he stayed in my house.  He
23        stayed maybe one week or two weeks in my house,
24        then he move from there.  He said I'm going to move
```

PAGE 31

Page 31

```
 1        over there, I said welcome, and that's it.
 2    Q   Who else stayed in your house during that time?
 3    A   Me and my family and Suresh.
 4    Q   Other than your family, I'm talking Suresh's
 5        family, who moved -- who stayed at your house?
 6    A   Suresh's family and my family.  That's it.
 7    Q   No, no.  In addition to your family at your house
 8        you said Suresh stayed at your house?
 9    A   Yeah.
10    Q   Who else in addition to Suresh?
11    A   His wife, Kailash.
12    Q   And the other one is his wife?
13    A   Yeah.
14    Q   Was there anybody else staying at your house at
15        that time?
16    A   No.
17    Q   Just your family.  Who was in your family?
18    A   My son, my wife.
19    Q   Your son is Ajay?
20    A   (Witness nods.)
21    Q   Do you know where Suresh moved to after your house?
22    A   He move in on 95 Highland Street.
23    Q   What city is that in?
24    A   Easton.
```

PAGE 32

Page 32

```
 1    Q   Do you own that property?
 2    A   Yeah.
 3    Q   There is also a convenient store at that location?
 4    A   Yeah.
 5    Q   Do you own that convenience store?
 6    A   No.
 7    Q   Do you know who does?
 8    A   Deny.
 9    Q   Who is that?
10    A   His name is Deny.
11    Q   Last name?
12    A   Patel.
13    Q   D-E-N-Y?
14    A   Yeah.
15    Q   Any relation to you?
16    A   No.
17    Q   Does he rent it from you?
18    A   Yeah.
19    Q   Do you have any involvement with that store other
20        than renting a place --
21    A   No.
22    Q   Did you have anything to do with Ashis coming to
23        the United States from India?
24    A   I don't know nothing about that.
```

**SHEET 9    PAGE 33**

Page 33

| | | |
|---|---|---|
| 1 | Q | Did you sponsor him? |
| 2 | A | No. |
| 3 | Q | Do you know who did? |
| 4 | A | I don't know. |
| 5 | Q | Did Ashis move from Chicago to Boston in order to |
| 6 | | get a job in one of your businesses? |
| 7 | A | No. |
| 8 | Q | Did he work in any of your businesses? |
| 9 | A | No. |
| 10 | Q | Did he talk to you about working in one of your |
| 11 | | businesses? |
| 12 | A | He said I -- no. |
| 13 | Q | I didn't get that. |
| 14 | A | No. |
| 15 | Q | He did not? |
| 16 | A | No. |
| 17 | Q | Did he ever apply for a job in any of your |
| 18 | | businesses? |
| 19 | A | No. |
| 20 | Q | Did you learn about Ashis being in a motor vehicle |
| 21 | | accident? |
| 22 | A | I heard, but got in accident, that's it. |
| 23 | Q | Who did you hear that from? |
| 24 | A | Some employee, somebody told me. Who told me, I |

**PAGE 34**

Page 34

| | | |
|---|---|---|
| 1 | | don't remember, but I heard it. Then I call over |
| 2 | | there, you know, they said he was okay, nothing |
| 3 | | wrong, that's it. |
| 4 | Q | Did you go see him? |
| 5 | A | No. |
| 6 | Q | Was he living at the Highland Street address at |
| 7 | | that point? |
| 8 | A | I don't know at that time he live over there or |
| 9 | | not. I don't remember. |
| 10 | Q | He wasn't living at your house at the time? |
| 11 | A | No. |
| 12 | Q | Did you go see Ashis that night in person? |
| 13 | A | No. |
| 14 | Q | Did you help Ashis transfer his cell phone to |
| 15 | | Massachusetts after he came to Massachusetts? |
| 16 | A | What did you say? |
| 17 | Q | Did you help him to transfer his cell phone to |
| 18 | | Massachusetts after he moved here from Chicago? |
| 19 | | MR. PEARLMAN: Are you talking about |
| 20 | | his number, his telephone number? |
| 21 | A | Telephone number -- |
| 22 | Q | Yeah. |
| 23 | A | I don't know nothing about that. |
| 24 | Q | Vasu Dev Patel, is that Ashis' uncle? |

**PAGE 35**

Page 35

| | | |
|---|---|---|
| 1 | A | Yeah. |
| 2 | Q | Do you know where he lives? |
| 3 | A | Somewhere in Woburn. |
| 4 | Q | Do you have a brother in this area? |
| 5 | A | My brother? |
| 6 | Q | Yes. |
| 7 | A | Yeah. |
| 8 | Q | What's his name? |
| 9 | A | Arvind Patel. A-R-V-I-N-D, Patel. |
| 10 | Q | Do you have any other brothers or sisters in the |
| 11 | | area? |
| 12 | A | Yeah. |
| 13 | Q | How many? |
| 14 | A | One brother also. |
| 15 | Q | One brother in addition to Arvind? |
| 16 | A | Yeah. |
| 17 | Q | Who is that? |
| 18 | A | His name is Jantill Patel. |
| 19 | Q | How do you spell that? |
| 20 | A | J-A-N-T-I-L-L. |
| 21 | Q | Does Arvind own any convenience stores to your |
| 22 | | knowledge? |
| 23 | A | He own some store. |
| 24 | Q | Burlington? |

**PAGE 36**

Page 36

| | | |
|---|---|---|
| 1 | A | Yeah. |
| 2 | Q | Anything else other than Burlington? |
| 3 | A | Out there a couple of stores, I don't know the |
| 4 | | names of the town. |
| 5 | Q | Do you recall what your home phone number was in |
| 6 | | July of 2002? |
| 7 | A | Whose phone number? |
| 8 | Q | Your home phone number. |
| 9 | A | I have same number. I don't know if it change or |
| 10 | | not. |
| 11 | Q | What is that? |
| 12 | A | 508-836-2615. |
| 13 | Q | What is your cell phone number? |
| 14 | A | 508-333-3690. |
| 15 | Q | Did you ever talk to Ashis on your cell phone? |
| 16 | A | Maybe, I don't know. |
| 17 | Q | Did he ever call you on your cell phone? |
| 18 | A | Sometime calling. |
| 19 | Q | Sometimes he did? |
| 20 | A | Yeah. |
| 21 | Q | So, you gave him your number? |
| 22 | A | Whose number? |
| 23 | Q | Your number. |
| 24 | A | I give it already. |

SHEET 10   PAGE 37

Page 37

| | | |
|---|---|---|
| 1 | Q | No, no. You gave it to Ashis? |
| 2 | A | No. |
| 3 | Q | But he called you on your cell phone? |
| 4 | A | Yeah. |
| 5 | Q | Do you know how he got your number? |
| 6 | A | My number everybody has. |
| 7 | Q | Everybody has it? |
| 8 | A | Yeah. |
| 9 | Q | Does Neha Corp. have records of who was actually |
| 10 | | working at Quick Stop on July 8, 2002? |
| 11 | A | You have to ask the accountant. He will find out |
| 12 | | everything. |
| 13 | Q | Would he have records that would show who actually |
| 14 | | worked that day? |
| 15 | A | Yeah, there. |
| 16 | | MR. PEARLMAN: Off the record for a |
| 17 | | second. |
| 18 | | (Off the record) |
| 19 | Q | Do you recognize the number 508-846-0136? |
| 20 | A | I don't know. |
| 21 | Q | Does it sound familiar? |
| 22 | A | 781? |
| 23 | Q | No. 508- -- |
| 24 | A | 508. |

PAGE 38

Page 38

| | | |
|---|---|---|
| 1 | Q | -- 846-0136. |
| 2 | A | I don't remember. |
| 3 | Q | Did you ever talk to Ashis about how his motor |
| 4 | | vehicle accident actually happened? |
| 5 | A | No. |
| 6 | Q | Did you ever learn from anybody how his motor |
| 7 | | vehicle accident happened? |
| 8 | A | No. |
| 9 | Q | Did you ever talk to anybody else about Ashis' |
| 10 | | accident? |
| 11 | A | No. |
| 12 | Q | What about your son, Ajay? |
| 13 | A | No. |
| 14 | Q | Did you know that Ajay went to court with Ashis |
| 15 | | about this accident? |
| 16 | A | I don't know. Maybe he went. |
| 17 | Q | He never talked to you about it? |
| 18 | A | No. |
| 19 | Q | Have you had any other dealings with Ashis other |
| 20 | | than him staying at your house a few weeks? |
| 21 | A | No. |
| 22 | Q | Did you talk to Ashis at all after he moved out of |
| 23 | | your house? |
| 24 | A | After he moved out? |

PAGE 39

Page 39

| | | |
|---|---|---|
| 1 | Q | Yes. |
| 2 | A | Sometime I go in a party and talk with everybody |
| 3 | | and see at that time, you know. But not like |
| 4 | | particularly talk with him. |
| 5 | Q | So, you had nothing to do with him on any business? |
| 6 | A | Not like that. |
| 7 | Q | He never worked for any of your stores? |
| 8 | A | No. |
| 9 | Q | Did you ever call Ashis? |
| 10 | A | Call what? |
| 11 | Q | I don't know. On any matter. |
| 12 | A | No. |
| 13 | Q | Did you talk to anybody else after you learned of |
| 14 | | Ashis being in a motor vehicle accident? |
| 15 | A | No. |
| 16 | Q | Did you mention it to anybody else? |
| 17 | A | No. It's not big accident at that time I had in my |
| 18 | | knowledge at that time, you know. He got in |
| 19 | | accident and they say nobody hurt, like that, you |
| 20 | | know. So, fine, forget about it. That's it. |
| 21 | Q | Is that what he told you, that nobody got hurt? |
| 22 | A | Yeah. I heard the message like that, you know. |
| 23 | | Who called, I don't know, I do not remember, you |
| 24 | | know. But I heard that he got in accident, he's |

PAGE 40

Page 40

| | | |
|---|---|---|
| 1 | | okay, and that's it. |
| 2 | Q | Did you hear that from him or did you hear it from |
| 3 | | somebody else? |
| 4 | A | I don't remember. At that time, two years, who |
| 5 | | called me and who give me message. How I can find |
| 6 | | out. |
| 7 | Q | On page seven of the deposition subpoena, -- |
| 8 | | MR. PEARLMAN: What number are we at? |
| 9 | | MR. KODITEK: Number seven. |
| 10 | | MR. PEARLMAN: Item seven or page |
| 11 | | seven? Oh, both. |
| 12 | | MR. KODITEK: Both. |
| 13 | Q | There's a list of people there. Do you recognize |
| 14 | | those names? |
| 15 | A | Yeah. |
| 16 | Q | Who is Viral Patel? |
| 17 | A | Viral Patel is brother. |
| 18 | Q | Your brother? |
| 19 | A | His brother. |
| 20 | Q | Okay. Arvind is your brother? |
| 21 | A | Yeah. But I don't know, I mean there's different |
| 22 | | -- a different Arvind. |
| 23 | Q | It could be a different Arvind, but you have a |
| 24 | | brother Arvind? |

SHEET 11   PAGE 41

Page 41

```
1    A    Yeah, I have brother named that.
2    Q    Suresh is --
3    A    His father.  Kailash his mother.
4    Q    Was she the one that stayed in the house?
5    A    Whose house?
6    Q    Your house.  For that three week.
7    A    Yeah.  Two weeks, something like that.
8    Q    Did you know Kailash from India?
9    A    Yeah.
10   Q    Were you friends with Kailash or Suresh?
11   A    Suresh.
12   Q    Vasu Dev, is that Ashis' uncle?
13   A    Yeah.
14   Q    And he's one that works in -- worked in the store
15        2003, 2004?
16   A    Yeah.
17   Q    Do you know where he worked in 2002?
18   A    No.  Where he's working is not in my mind.
19   Q    The next one is Pragnesh.
20   A    I don't know Pragnesh.
21   Q    You don't recognize that name.  What about Yogesh?
22   A    I don't know.  There's five Yogesh in
23        Massachusetts, which Yogesh?
24   Q    I don't know.  Do you recognize that name?
```

PAGE 42

Page 42

```
1    A    My son's name is Yogesh, but I don't know this
2         Yogesh or not, --
3    Q    You have a son Yogesh?
4    A    -- I don't know that.
5    Q    That's your son's name?
6    A    Yeah.
7    Q    Is that different than Ajay?
8    A    Yeah.  Different than Ajay.
9    Q    Ajay is at home though?
10   A    Yeah.
11   Q    Yogesh has moved out?
12   A    Yeah.
13   Q    Does he have any involvement in any of your
14        businesses?
15   A    No.
16   Q    Do you know what does he do now?
17   A    I don't know.
18   Q    Does he live in this area?
19   A    No.
20   Q    Does he live in India?
21   A    He live far from us, in New Hampshire.
22   Q    Oh, that's not that far.  I thought he lived in
23        Oregon or something.
24   A    I have good relations, very fine.
```

PAGE 43

Page 43

```
1    Q    This piece of paper which is Exhibit 4.2, is one of
2         these sheets of paper filled out every day for each
3         of your stores?
4    A    Yeah.
5    Q    That's your usual practice?
6    A    Must be.
7    Q    Is there an amount on this which shows the amount
8         that was being taken to the bank on a daily basis?
9    A    Yeah.
10   Q    Where is that?
11   A    In the bank.  He count and everything, I'm not
12        exactly sure how he count everything, you know.
13        But he write down something like that, maybe the
14        lottery and ATM and the card money and everything.
15        He writes down, he knows everything.
16   Q    I notice at the bottom of the column on the top
17        right-hand side there's a figure, twenty-one
18        seventy-seven forty-nine.  Is that the daily
19        receipts for the business?
20   A    Yeah.
21   Q    On the left-hand side there's eleven thirty-seven
22        and eleven thirty-seven R.A.  What does that mean?
23   A    That's the balance.  Previous day balance coming in
24        the next day.  These are all -- these write down
```

PAGE 44

Page 44

```
1         like he would write down the -- that's not for the
2         account purpose, you know.
3    Q    What's it for?
4    A    Purpose only for he understand himself.
5    Q    What is the R.A. or maybe P.A.
6    A    That's not R.A. that's the B.A.
7    Q    What's that stand for?
8    A    That's the bank deposit.
9    Q    Bank deposit.  Was the from the previous day,
10        eleven thirty-seven?
11   A    Yeah.
12   Q    So, in other words you made eleven thirty-seven the
13        previous day and you deposited eleven thirty-seven,
14        so that's what that's showing?
15   A    Yeah, something like that.
16   Q    Would the next day, for example, show twenty-one
17        seventy-seven --
18   A    Yeah.
19   Q    -- and then a bank deposit twenty-one seventy-
20        seven, something to that effect?
21   A    Yeah.
22             MR. PEARLMAN:  No.
23             MR. KODITEK:  No?
24             MR. PEARLMAN:  No.
```

---

SHEET 12   PAGE 45

**Page 45**

```
1              MR. KODITEK: Okay.
2    A    Fifteen thirty-five the total cash.
3    Q    Is that cash?
4    A    Yeah, that's the cash.
5    Q    Is this your total receipts including credit cards?
6    A    (Witness shakes head.)
7    Q    No?
8              MR. PEARLMAN:  Off the record for a
9         second.
10             (Off the record)
11   Q    Fifteen thirty-five, is that the cash you received
12        for the day?
13   A    Yeah.
14   Q    Now, was this figure calculated at a specific time
15        each day?
16   A    Maybe at the closing time.
17   Q    Nine o'clock?
18   A    At the closing time.  I don't know what time he's
19        made the preparation.
20   Q    You said before you generally were open 7:00 a.m.
21        to 9:00 p.m.
22   A    Yeah.
23   Q    Would that be the total receipts for that day or,
24        for example, would you go from noontime to noontime
```

**Page 46**

```
1         on a daily basis?
2    A    Until closing.
3    Q    So, it would be opening to closing each day.  Would
4         that be deposited then the following day?
5    A    Yeah.
6    Q    So, if these are your receipts on July 8th, this
7         money would be deposited on July 9th?
8    A    Yeah.
9    Q    Would that amount of money be held aside in the
10        cash register for the following day or would you
11        use it?
12   A    He'd deposit the -- the lottery -- what he did, I
13        don't know.  You'd have to find out.  Did he
14        deposit all that in the bank, I don't know.  Maybe
15        he put in the lottery account, I don't know.
16        Sometimes you use the business money in the
17        lottery, sometimes the lottery money used for the
18        business.  Sometimes you can not find out the
19        business -- you can not find out in the business
20        account.
21   Q    My understanding is the figures on the top right-
22        hand side are first, a list of the total pay-outs,
23        which is the six forty-two forty-nine, --
24   A    Yeah.
```

**Page 47**

```
1    Q    -- and then the money you paid out you added your
2         total cash receipts of the day, the fifteen thirty-
3         five, and came to the total of the twenty-one
4         seventy-seven.  Is that correct?
5    A    Yeah.
6    Q    On the left-hand column a couple of lines down
7         there's a thousand, milk.  Do you know what that
8         means?
9    A    Maybe paying the milk company a thousand dollars.
10   Q    You're not sure what it means?
11   A    I'm not sure.
12   Q    If, for example, Baba filled out this form, where
13        would he get this information from?
14   A    From the store.
15   Q    What was in the store that he could get this
16        information from?
17   A    He write down on the paper what is the cash out in
18        the register, pull out the receipt.
19   Q    So, there would be a receipt in the cash register
20        for each of these pay-outs?
21   A    Yeah.
22   Q    Do you keep those receipts of the pay-outs?
23   A    Does not keep.
24   Q    You don't keep them?
```

**Page 48**

```
1    A    When he write down everything, then is throwed
2         (sic) away.
3    Q    Do you know what Nick was doing at Quick Stop on
4         July 8, 2002?
5    A    I don't know.
6    Q    Could he have been covering for someone else?
7    A    I don't know why he came over there.
8    Q    Well, could he have been covering for somebody else
9         that was supposed to be working there?
10   A    I'm not sure, he's came for the covering, he's come
11        for the -- if they had planned to go somewhere
12        else.  I don't know.  The youngest kid he said I'm
13        going to Worcester, but he went in New Hampshire,
14        you know.  My son and the employee is I'm going to
15        casino, then he went somewhere else.  He never said
16        the truth.
17   Q    Is there anybody who would know whether Nick was
18        there that day?
19   A    I do not know.
20   Q    Do you know of anybody who would know why he was
21        there that day?
22   A    I don't know why should I have to keep it in mind,
23        because I don't know about that whole thing, you
24        know.
```

SHEET 13   PAGE 49

Page 49

```
 1   Q   Well, what I'm trying to --
 2   A   Because I get the letter then I know something is
 3       wrong over there.  Otherwise then I don't have
 4       nothing in the question about these things, you
 5       know.
 6   Q   Well, I'm trying to understand why --
 7   A   Yeah, I understand what you say, but why should I
 8       have to keep it in mind that situation is nothing
 9       in the future.  Why I have to keep in mind, you
10       know.
11   Q   I understand.  But I mean understand that my
12       understanding is Nick was working there and if
13       you're saying he wasn't, I need to understand now
14       why Ashis took Nick's car without Nick going with
15       him.
16   A   Yeah, you said that's right, but I don't know about
17       the whole story, you know.
18   Q   Did you know that Ashis went to court at some point
19       in time over this case?
20   A   No, I didn't know.
21               MR. KODITEK:  Well, what I'll do at
22       this point in time, because I'll probably want to
23       call your accountant to see if there's more
24       records, and if there are I may have you come back
```

PAGE 50

Page 50

```
 1       and we'll talk about that.  Is that okay?
 2               THE WITNESS:  Not a problem.
 3               MR. KODITEK:  Okay, so why don't we
 4       suspend.
 5               MR. WHITNEY:  I don't have any
 6       questions.
 7                           *
 8                           *
 9                           *
10       (Whereupon, the deposition suspended at 4:15 p.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

PAGE 51

Page 51

E R R A T A   S H E E T

Deposition of:  Raman Patel (6-30-05)
Re:  DOCKET NUMBER:  BRCV2003-00216B

| Page Number | Line Number | Depo. Reads | Correction | Reason |
|---|---|---|---|---|
| | | | | |

PAGE 52

Page 52

COMMONWEALTH OF MASSACHUSETTS

I, Raman Patel, have read the foregoing
transcript of testimony given in the deposition
held on June 29, 2005, and say that it is true and
correct to the best of my knowledge, information
and belief.

_____
                    Raman Patel

Signed this_____day of_____, 200___, under
the pains and penalties of perjury.

Submitted By Plaintiffs' Attorneys,

s/Robert A. Koditek
**KODITEK LAW FIRM**
160 Old Derby Street
Suite 225
Hingham, MA  02043
(617) 328-3800

DATED:  October 29, 2005

## <u>CERTIFICATE OF SERVICE</u>

I, Robert A. Koditek, hereby certify that a true copy of the above document was served upon (each party appearing pro se and/or) the attorney of record for each (other) party by [mailing same (first class mail) ~~(certified mail, return receipt requested)~~ postage pre-paid] ~~[facsimile transmission] [overnight mail/delivery] [delivery/in-hand]~~ [electronically], on this date, to:

Thomas W. Beliveau, Esquire
FULLER, ROSENBERG, PALMER
    & BELIVEAU, LLP
340 Main Street
Suite 817
Worcester, MA  01608

s/Robert A. Koditek